In the United States District Court
for the Northern District of Texas
Dallas Division

---

| | |
|---|---|
| Brian Armstrong, Javier Alvarez, and Luke Gruszka, | Case No. 3:21-cv-2677 |
| *On behalf of themselves and those similarly situated*, | |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| Bam! Pizza Management, Inc.; Brian Bailey; C.S.P.H., Inc.; Joseph Romano; Richard Hafner; Doe Corporation 1-10; John Doe 1-10; | Jury Demand Endorsed Hereon |
| Defendants. | |

---

## FLSA Collective Action Complaint

---

1.    Brian Armstrong, Javier Alvarez, and Luke Gruszka on behalf of themselves and similarly-situated individuals, brings this action against Defendants Bam! Pizza Management, Inc.; Brian Bailey; C.S.P.H., Inc.; Joseph Romano; Richard Hafner; Doe Corporation 1-10; and John Doe 1-10 ("Defendants"). Plaintiffs seek appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiffs and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., the Colorado Wage Claim Act ("CWCA"), C.R.S. § 8-4-101, *et seq*., the Colorado Minimum Wage Act ("CMWA"), C.R.S. 8-6-101, *et seq.*, and New Mexico Minimum Wage Act, N.M. Stat. Ann. § 50-4-21, *et. Seq*.

**ORIGINAL COMPLAINT**

2.      Defendants own over 100 Domino's stores located in Texas, New Mexico, and Colorado  ("Defendants' Domino's stores").

3.      Plaintiffs seek to represent the delivery drivers who have worked at the Defendants' Domino's stores.

4.      Defendants repeatedly and willfully violated the Fair Labor Standards Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

5.      All delivery drivers at the Defendants' Domino's stores, including Plaintiffs, have been subject to the same or similar employment policies and practices.

### Jurisdiction and Venue

6.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiffs' FLSA claims.

7.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

### Parties

**Plaintiffs**

**Brian Armstrong**

8.      Plaintiff Brian Armstrong is a resident of Colorado.

9.      Plaintiff Armstrong is an "employee" of the Defendants as defined in the FLSA.

10.      Plaintiff Armstrong has given written consent to join this action.

**Javier Alvarez**

**ORIGINAL COMPLAINT**

11.    Plaintiff Javier Alvarez is a resident of New Mexico.

12.    Plaintiff Alvarez is an "employee" of the Defendants as defined in the FLSA.

13.    Plaintiff Alvarez has given written consent to join this action.

**Luke Gruszka**

14.    Plaintiff Luke Gruszka is a resident of New Mexico.

15.    Plaintiff Gruszka is an "employee" of the Defendants as defined in the FLSA.

16.    Plaintiff Gruszka has given written consent to join this action.

**<u>Defendants</u>**

**Bam! Pizza Management, Inc.**

17.    Defendant Bam! Pizza Management, Inc. is a domestic corporation authorized to do business under the laws of Texas.

18.    Bam! Pizza Management, Inc. is the entity that operates the Defendants' Domino's stores.

19.    Upon information and belief, Bam! Pizza Management, Inc. owns over 100 stores in Texas, New Mexico, and Colorado.

20.    Bam! Pizza Management, Inc. is the entity that appears on Plaintiffs' paystubs for work they completed for Defendants' Domino's stores.

21.    Bam! Pizza Management, Inc. has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

22.    Bam! Pizza Management, Inc. has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

**ORIGINAL COMPLAINT**

23.     At all relevant times, Bam! Pizza Management, Inc. maintains control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

24.     Bam! Pizza Management, Inc. is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

25.     At all relevant times, Bam! Pizza Management, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

26.     Bam! Pizza Management, Inc.'s gross revenue exceeds $500,000 per year.

**C.S.P.H., Inc.**

27.     Defendant C.S.P.H., Inc. was a domestic corporation authorized to do business under the laws of Texas.

28.     C.S.P.H., Inc. was the entity that operated the Defendants' Domino's stores until approximately 2019.

29.     Upon information and belief, C.S.P.H., Inc. owned thirty-five Domino's stores in Texas and Colorado.

30.     C.S.P.H., Inc. was the entity that appeared on Plaintiff Armstrong's paystubs for work he completed for Defendants' Domino's stores.

31.     C.S.P.H., Inc. had substantial control over Plaintiff Armstrong's and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

**ORIGINAL COMPLAINT**

32.     C.S.P.H., Inc. had direct or indirect control of the terms and conditions of Plaintiff Armstrong's work and the work of similarly situated employees.

33.     At all relevant times in or before 2019, C.S.P.H., Inc. maintained control, oversight, and direction over Plaintiff Armstrong and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

34.     C.S.P.H., Inc. was an "employer" of Plaintiff Armstrong and similarly situated employees as that term is defined by the FLSA.

35.     At all relevant times in or before 2019, C.S.P.H., Inc. had been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

36.     C.S.P.H., Inc.'s gross revenue exceeded $500,000 per year.

**Brian Bailey**

37.     Defendant Brian Bailey is the owner of Bam! Pizza Management, Inc. and the Defendants' Domino's stores.

38.     Brian Bailey is the President of Bam! Pizza Management, Inc.

39.     Brian Bailey is the owner of the Bam! Pizza Management, Inc.

40.     Brian Bailey operates over 100 stores in Texas, New Mexico, and Colorado.

41.     Brian Bailey is individually liable to the delivery drivers at the Defendants' Domino's stores under the definitions of "employer" set forth in the FLSA because he owns and operates the Defendants' Domino's stores, serves as a president and owner of Bam! Pizza Management, Inc., ultimately controls significant aspects of the Defendants' Domino's stores'

day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

42.    Brian Bailey is the franchisee of the Defendants' Domino's stores.

43.    At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had financial control over the operations at each of the Defendants' Domino's stores.

44.    At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has a role in significant aspects of the Defendants' Domino's stores' day to day operations.

45.    At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had control over the Defendants' Domino's stores' pay policies.

46.    At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had power over personnel and payroll decisions at the Defendants' Domino's stores, including but not limited to influence of delivery driver pay.

47.    At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had the power to hire, fire and discipline employees, including delivery drivers at the Defendants' Domino's stores.

48.    At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Domino's stores.

49.    At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had the power to transfer the assets and liabilities of the Defendant entities.

**ORIGINAL COMPLAINT**

50.     At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had the power to declare bankruptcy on behalf of the Defendant entities.

51.     At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had the power to enter into contracts on behalf of each of the Defendants' Domino's stores.

52.     At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had the power to close, shut down, and/or sell each of the Defendants' Domino's stores.

53.     At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey had authority over the overall direction of each of Defendants' Domino's stores and was ultimately responsible for their operations.

54.     The Defendants' Domino's stores function for Brian Bailey's profit. Brian Bailey had influence over how the Defendants' Domino's stores can run more profitably and efficiently.

**Joseph Romano**

55.     Defendant Joseph Romano was an owner of C.S.P.H., Inc. and the Defendants' Domino's stores.

56.     Joseph Romano was an officer of C.S.P.H., Inc.

57.     Joseph Romano operated approximately thirty-five Domino's stores in Texas and Colorado.

58.     Joseph Romano is individually liable to the delivery drivers at the Defendants' Domino's stores under the definitions of "employer" set forth in the FLSA because he owned and operated the Defendants' Domino's stores, ultimately controlled significant aspects of the

ORIGINAL COMPLAINT

Defendants' Domino's stores' day-to-day functions, and ultimately controlled compensation and reimbursement of employees.  29 U.S.C. § 203(d).

59.     Joseph Romano was a franchisee of the Defendants' Domino's stores until approximately 2019.

60.     At all relevant times before 2019, by virtue of his role as an owner of the Defendants' Domino's stores, Joseph Romano had financial control over the operations at each of the Defendants' Domino's stores.

61.     At all relevant times before 2019, by virtue of his role as an owner of the Defendants' Domino's stores, Joseph Romano had a role in significant aspects of the Defendants' Domino's stores' day to day operations.

62.     At all relevant times before 2019, by virtue of his role as an owner of the Defendants' Domino's stores, Joseph Romano had control over the Defendants' Domino's stores' pay policies.

63.     At all relevant times before 2019, by virtue of his role as an owner of the Defendants' Domino's stores, Joseph Romano had power over personnel and payroll decisions at the Defendants' Domino's stores, including but not limited to influence of delivery driver pay.

64.     At all relevant times before 2019, by virtue of his role as an owner of the Defendants' Domino's stores, Joseph Romano had the power to hire, fire and discipline employees, including delivery drivers at the Defendants' Domino's stores.

65.     At all relevant times before 2019, by virtue of his role as an owner of the Defendants' Domino's stores, Joseph Romano had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Domino's stores.

ORIGINAL COMPLAINT

66.    At all relevant times before 2019, by virtue of his role as an owner of the Defendants' Domino's stores, Joseph Romano had the power to transfer the assets and liabilities of the Defendant entities.

67.    At all relevant times before 2019, by virtue of his role as an owner of the Defendants' Domino's stores, Joseph Romano had the power to declare bankruptcy on behalf of the Defendant entities.

68.    At all relevant times before 2019, by virtue of his role as an owner of the Defendants' Domino's stores, Joseph Romano had the power to enter into contracts on behalf of each of the Defendants' Domino's stores.

69.    At all relevant times before 2019, by virtue of his role as an owner of the Defendants' Domino's stores, Joseph Romano had the power to close, shut down, and/or sell each of the Defendants' Domino's stores.

70.    At all relevant times before 2019, by virtue of his role as an owner of the Defendants' Domino's stores, Joseph Romano had authority over the overall direction of each of Defendants' Domino's stores and was ultimately responsible for their operations.

71.    The Defendants' Domino's stores functioned for Joseph Romano's profit.

72.    Joseph Romano had influence over how the Defendants' Domino's stores could run more profitably and efficiently.

**Richard Hafner**

73.    Defendant Richard Hafner was an owner of C.S.P.H., Inc. and the Defendants' Domino's stores.

74.    Richard Hafner was an officer of C.S.P.H., Inc.

**ORIGINAL COMPLAINT**

75.     Richard Hafner operated approximately thirty-five Domino's stores in Texas and Colorado.

76.     Richard Hafner is individually liable to the delivery drivers at the Defendants' Domino's stores under the definitions of "employer" set forth in the FLSA because he owned and operated the Defendants' Domino's stores, ultimately controlled significant aspects of the Defendants' Domino's stores' day-to-day functions, and ultimately controlled compensation and reimbursement of employees.  29 U.S.C. § 203(d).

77.     Richard Hafner was a franchisee of the Defendants' Domino's stores until approximately 2019.

78.     At all relevant times before 2019, by virtue of his role as an owner of the Defendants' Domino's stores, Richard Hafner had financial control over the operations at each of the Defendants' Domino's stores.

79.     At all relevant times before 2019, by virtue of his role as an owner of the Defendants' Domino's stores, Richard Hafner had a role in significant aspects of the Defendants' Domino's stores' day to day operations.

80.     At all relevant times before 2019, by virtue of his role as an owner of the Defendants' Domino's stores, Richard Hafner had control over the Defendants' Domino's stores' pay policies.

81.     At all relevant times before 2019, by virtue of his role as an owner of the Defendants' Domino's stores, Richard Hafner had power over personnel and payroll decisions at the Defendants' Domino's stores, including but not limited to influence of delivery driver pay.

82.     At all relevant times before 2019, by virtue of his role as an owner of the Defendants' Domino's stores, Richard Hafner had the power to hire, fire and discipline employees, including delivery drivers at the Defendants' Domino's stores.

83.     At all relevant times before 2019, by virtue of his role as an owner of the Defendants' Domino's stores, Richard Hafner had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Domino's stores.

84.     At all relevant times before 2019, by virtue of his role as an owner of the Defendants' Domino's stores, Richard Hafner had the power to transfer the assets and liabilities of the Defendant entities.

85.     At all relevant times before 2019, by virtue of his role as an owner of the Defendants' Domino's stores, Richard Hafner had the power to declare bankruptcy on behalf of the Defendant entities.

86.     At all relevant times before 2019, by virtue of his role as an owner of the Defendants' Domino's stores, Richard Hafner had the power to enter into contracts on behalf of each of the Defendants' Domino's stores.

87.     At all relevant times before 2019, by virtue of his role as an owner of the Defendants' Domino's stores, Richard Hafner had the power to close, shut down, and/or sell each of the Defendants' Domino's stores.

88.     At all relevant times before 2019, by virtue of his role as an owner of the Defendants' Domino's stores, Richard Hafner had authority over the overall direction of each of Defendants' Domino's stores and was ultimately responsible for their operations.

89.     The Defendants' Domino's stores functioned for Richard Hafner's profit.

**ORIGINAL COMPLAINT**

Richard Hafner had influence over how the Defendants' Domino's stores could run more profitably and efficiently.

**Doe Corporation 1-10**

90.     Upon information and belief, Defendants own, operate, and control other entities and/or corporations that also comprise part of the Defendants' Domino's stores, and qualify as "employers" of Plaintiffs and the delivery drivers at the Defendants' Domino's stores as that term is defined by the FLSA.

91.     Upon information and belief, Brian Bailey owns and/or operates, in whole or in part, a number of other entities that make up part of the Defendants' Domino's stores operation.

92.     Upon information and belief, Joseph Romano and/or Richard Hafner owned and/or operated, in whole or in part, a number of other entities that make up part of the Defendants' Domino's stores operation.

93.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

94.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiffs and the delivery drivers at the Defendants' Domino's stores as that term is defined by the FLSA.

95.     Upon information and belief, Brian Bailey has entered into co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiffs and the delivery drivers at the Defendants' Domino's stores as that term is defined by the FLSA.

96.   Upon information and belief, Joseph Romano and/or Richard Hafner had entered into co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiff Armstrong and the delivery drivers at the Defendants' Domino's stores as that term is defined by the FLSA.

97.   The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**Facts**

**Class-wide Factual Allegations**

98.   During all relevant times, Defendants have operated the Defendants' Domino's stores.

99.   Plaintiffs, and the similarly situated persons Plaintiffs seek to represent, are current and former delivery drivers at the Defendants' Domino's stores.

100.   All delivery drivers employed at the Defendants' Domino's stores over the last three years have had essentially the same job duties.

101.   When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Defendants' Domino's stores cleaning up dishes, sweeping, making boxes, filling the ice container, and completing other duties inside the restaurant, as necessary.

102.   Plaintiffs and similarly situated delivery drivers have been paid minimum wage minus a tip credit for the hours they worked on the road for Defendants' Domino's stores.

103.   The job duties performed by delivery drivers inside the store are not related to their tip-producing duties while they are out on the road making deliveries.

104.   Delivery drivers do not complete their inside job duties contemporaneously with their delivery job duties.

**ORIGINAL COMPLAINT**

105.    The delivery drivers at the Defendants' Domino's stores work "dual jobs."

106.    Defendants require delivery drivers at Defendants' Domino's stores to provide cars to use while completing deliveries for Defendants.

107.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

108.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

109.    Pursuant to such requirements, Plaintiffs and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

110.    The Defendants' Domino's stores reimburse their delivery drivers based on a flat rate per delivery.

111.    Defendants' reimbursement payments have no connection to the actual expenses incurred by the delivery drivers.

112.    The Defendants' Domino's stores do not track or record the delivery drivers' actual expenses.

113.    The Defendants' Domino's stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

114.    The Defendants' Domino's stores do not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

115.    The Defendants' Domino's stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

116.    The Defendants' Domino's stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

117.    The Defendants' Domino's stores did not reasonably approximate the delivery drivers' expenses.

118.    Plaintiffs and similarly situated delivery drivers typically average 4-7 miles per round-trip delivery.

119.    The Defendants' Domino's stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

120.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

a.    2018: 54.5 cents/mile
b.    2019: 58 cents/mile
c.    2020: 57.5 cents/mile
d.    2021: 56 cents/mile

121.    The delivery drivers at the Defendants' Domino's stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g*., cell phone and data charges.

122.    As a result of the automobile and other job-related expenses incurred by Plaintiffs and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA.

**ORIGINAL COMPLAINT**

123.    Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Defendants' Domino's stores.

124.    Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

125.    Defendants have failed to properly take a tip credit from Plaintiffs' wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

126.    Defendants have also failed to properly inform Plaintiffs and similarly situated delivery drivers of the requirements for taking a tip credit. 29 C.F.R.§ 531.59.

127.    Defendants have willfully failed to pay federal, Colorado, and New Mexico state minimum wage to Plaintiffs and similarly situated delivery drivers at the Defendants' Domino's stores.

### Plaintiffs' Individual Factual Allegations

128.    Plaintiff Armstrong works at the Domino's store located on Stafford Lane in Delta, CO and has since approximately 2017.

129.    Plaintiff Armstrong is paid minimum wage minus a tip credit for all hours worked while delivering.

130.    When Plaintiff Armstrong is not delivering food, he works inside the restaurant. His work inside the restaurant includes stocking coke coolers, sweeping, and completing other duties inside the restaurant as necessary.

131.    Plaintiff Armstrong works dual jobs.

132.    Plaintiff Armstrong's inside duties are not related to his delivery duties.

133.    Plaintiff Armstrong is paid minimum wage for the hours he works inside the store.

134.    Plaintiff Armstrong is required to use his own car to deliver pizzas.

135.    Plaintiff Armstrong is reimbursed between $1.20 and $1.55 per delivery and this rate has fluctuated through the years based on gas prices.

136.    Defendants' reimbursement policy results in Plaintiff Armstrong usually receiving approximately $.21 per mile, on average.

137.    Plaintiff Armstrong is required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

138.    Plaintiff Armstrong is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

139.    Plaintiff Armstrong has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incur cell phone and data charges all for the primary benefit of Defendants.

140.    Defendants does not track the actual expenses incurred by Plaintiff Armstrong.

141.    Defendants do not ask Plaintiff Armstrong to provide receipts of the expenses he incurs while delivering pizzas for Defendants.

142.    Defendants do not reimburse Plaintiff Armstrong based on his actual delivery-related expenses.

143.    Plaintiff Armstrong is not reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

144.    Defendants do not reimburse Plaintiff Armstrong based on a reasonable approximation of his expenses.

145.    In 2019, for example, the IRS business mileage reimbursement has been \$.58 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. At the IRS standard business mileage reimbursement rate, Defendants' policy under-reimbursed Plaintiff Armstrong by \$.37 per mile (\$.58 - \$.21). Consider Plaintiff's estimate of 3 miles per delivery, Defendants under-reimbursed him \$1.11 per delivery (\$.37 x 3 miles), and \$2.78 per hour (2.5 deliveries per hour).

146.    Defendants fail to properly inform Plaintiff Armstrong of the requirements for taking a tip credit.

147.    Defendants fail to properly take a tip credit from Plaintiff Armstrong's wages because, after accounting for unreimbursed expenses, Defendants took more of a tip credit than they informed Plaintiff Armstrong they would be taking.

148.    Defendants fail to pay Plaintiff Armstrong's minimum wage as required by law.

149.    Plaintiff Alvarez works at the Domino's store located on N. Main Street in Las Cruces, NM and has since April 15, 2019.

150.    Plaintiff Alvarez is paid minimum wage minus a tip credit for all hours worked while delivering.

151.    When Plaintiff Alvarez is not delivering food, he works inside the restaurant. His work inside the restaurant includes stocking coke coolers, sweeping, and completing other duties inside the restaurant as necessary.

**ORIGINAL COMPLAINT**

152.    Plaintiff Alvarez works dual jobs.

153.    Plaintiff Alvarez's inside duties are not related to his delivery duties.

154.    Plaintiff Alvarez is paid minimum wage for the hours he works inside the store.

155.    Plaintiff Alvarez is required to use his own car to deliver pizzas.

156.    Plaintiff Alvarez is reimbursed $1.40 per delivery.

157.    Defendants' reimbursement policy results in Plaintiff Alvarez usually receiving approximately $.20 per mile, on average.

158.    Plaintiff Alvarez is required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

159.    Plaintiff Alvarez is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

160.    Plaintiff Alvarez has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incur cell phone and data charges all for the primary benefit of Defendants.

161.    Defendants does not track the actual expenses incurred by Plaintiff Alvarez.

162.    Defendants do not ask Plaintiff Alvarez to provide receipts of the expenses he incurs while delivering pizzas for Defendants.

163.    Defendants do not reimburse Plaintiff Alvarez based on his actual delivery-related expenses.

ORIGINAL COMPLAINT

164.    Plaintiff Alvarez is not reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

165.    Defendants do not reimburse Plaintiff Alvarez based on a reasonable approximation of his expenses.

166.    In 2019, for example, the IRS business mileage reimbursement has been $.58 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. At the IRS standard business mileage reimbursement rate, Defendants' policy under-reimbursed Plaintiff Alvarez by $.38 per mile ($.58 - $.20). Consider Plaintiff's estimate of 7 miles per delivery, Defendants under-reimbursed him $2.66 per delivery ($.38 x 7 miles), and $7.98 per hour (3 deliveries per hour).

167.    Defendants fail to properly inform Plaintiff Alvarez of the requirements for taking a tip credit.

168.    Defendants fail to properly take a tip credit from Plaintiff Alvarez's wages because, after accounting for unreimbursed expenses, Defendants took more of a tip credit than they informed Plaintiff Alvarez they would be taking.

169.    Defendants fail to pay Plaintiff Alvarez's minimum wage as required by law.

170.    Plaintiff Gruszka worked at the Domino's store located in Albuquerque, NM from approximately 2018 through August 2020. Plaintiff Gruszka then started working at the Domino's store located in Las Cruces, NM and has been working there since late 2020.

171.    Plaintiff Gruszka is paid minimum wage minus a tip credit for all hours worked while delivering.

**ORIGINAL COMPLAINT**

172.    When Plaintiff Gruszka is not delivering food, he works inside the restaurant. His work inside the restaurant includes stocking coke coolers, sweeping, and completing other duties inside the restaurant as necessary.

173.    Plaintiff Gruszka works dual jobs.

174.    Plaintiff Gruszka's inside duties are not related to his delivery duties.

175.    Plaintiff Gruszka is paid minimum wage for the hours he works inside the store.

176.    Plaintiff Gruszka is required to use his own car to deliver pizzas.

177.    Plaintiff Gruszka was reimbursed between $.85 and $1.00 per delivery at the Albuquerque, NM Domino's store.

178.    Plaintiff Gruszka was reimbursed $1.40 per delivery until a few weeks ago when it went to $1.65 per delivery at the Las Cruces, NM Domino's store.

179.    Defendants' reimbursement policy resulted in Plaintiff Gruszka usually receiving approximately $.20 per mile, on average.

180.    Until a few weeks ago, Defendants' reimbursement policy resulted in Plaintiff Gruszka usually receiving approximately $.28 per mile, on average.

181.    Plaintiff Gruszka is required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

182.    Plaintiff Gruszka is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

183.    Plaintiff Gruszka has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and

**ORIGINAL COMPLAINT**

damage, automobile financing, licensing and registration costs, and incur cell phone and data charges all for the primary benefit of Defendants.

184.    Defendants does not track the actual expenses incurred by Plaintiff Gruszka.

185.    Defendants do not ask Plaintiff Gruszka to provide receipts of the expenses he incurs while delivering pizzas for Defendants.

186.    Defendants do not reimburse Plaintiff Gruszka based on his actual delivery-related expenses.

187.    Plaintiff Gruszka is not reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

188.    Defendants do not reimburse Plaintiff Gruszka based on a reasonable approximation of his expenses.

189.    In 2020, for example, the IRS business mileage reimbursement has been $.575 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. At the IRS standard business mileage reimbursement rate, Defendants' policy under-reimbursed Plaintiff Gruszka by $.295 per mile ($.575 - $.28). Consider Plaintiff's estimate of 4.5 miles per delivery, Defendants under-reimbursed him $1.32 per delivery ($.295 x 4.5 miles), and $3.96 per hour (3 deliveries per hour).

190.    Defendants fail to properly inform Plaintiff Gruszka of the requirements for taking a tip credit.

191.    Defendants fail to properly take a tip credit from Plaintiff Gruszka's wages because, after accounting for unreimbursed expenses, Defendants took more of a tip credit than they informed Plaintiff Gruszka they would be taking.

192.    Defendants fail to pay Plaintiff Gruszka's minimum wage as required by law.

**ORIGINAL COMPLAINT**

## Collective Action Allegations

193.    Plaintiffs bring the First Count on behalf of themselves and all similarly situated current and former delivery drivers employed at the Defendants' Domino's stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

194.    At all relevant times, Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiffs and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiffs' claims are essentially the same as those of the FLSA Collective.

195.    Defendants' unlawful conduct is pursuant to a company policy or practice.

196.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

197.    Defendants are aware or should have been aware that they are not permitted to pay employees a tipped wage rate for hours worked in a non-tipped capacity.

198.    Defendants are aware or should have been aware that they were obligated to actually pay the tipped wage rate that they informed Plaintiffs and other delivery drivers that they would pay.

199.    Defendants are aware or should have been aware that federal law requires them to meet certain requirements for taking a tip credit from the wages of their employees.

200.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

**ORIGINAL COMPLAINT**

201.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

202.    The FLSA Collective members are readily identifiable and ascertainable.

203.    In recognition of the services Plaintiffs have rendered and will continue to render to the FLSA Collective, Plaintiffs will request payment of a service award upon resolution of this action.

### Colorado Class Action Allegations

204.    Plaintiff Armstrong brings the Second and Fourth Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Domino's stores in the State of Colorado between the date three years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Class").

205.    Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

206.    The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

207.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

208.    All of the records relevant to the claims of Rule 23 Class Members should be found in Defendants' records.

**ORIGINAL COMPLAINT**

209.    For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

210.    Notice can be provided by means permissible under Rule 23.

211.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

212.    There are more than 50 Rule 23 Class members.

213.    Plaintiff Armstrong's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

214.    Plaintiff Armstrong and the Rule 23 Class members are subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage and failing to reimburse for expenses.

215.    Plaintiff Armstrong and the Rule 23 Class members sustain similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

216.    Plaintiff Armstrong is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

217.    Plaintiff Armstrong is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

218.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum

simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

219.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

220.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff Armstrong and the Rule 23 Class members individually and include, but are not limited to:

a.    Whether Plaintiff Armstrong and the Rule 23 Class members are subject to a common expense reimbursement policy that result in wages to drop below legally allowable minimum wage;

b.    Whether Plaintiff Armstrong and the Rule 23 Class are subject to a policy that require them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

c.    Whether Plaintiff Armstrong and the Rule 23 Class incur expenses for the benefit of Defendants in the course of completing deliveries;

d.    Whether Defendants reimburse Plaintiff Armstrong and the Rule 23 Class members for their actual expenses;

e.    Whether Defendants reimburse Plaintiff Armstrong and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

f.    Whether Defendants reimburse Plaintiff Armstrong and the Rule 23 Class members based on a reasonable approximation of the expenses they incurred;

g.    Whether Defendants properly reimburse Plaintiff Armstrong and the Rule 23 Class members;

h.    Whether Plaintiff Armstrong and the Rule 23 Class were properly informed of the requirements for taking a tip credit;

**ORIGINAL COMPLAINT**

i. Whether Plaintiff Armstrong and the Rule 23 Class are actually paid the wage rate they were promised by Defendants;

j. Whether Plaintiff Armstrong and the Rule 23 Class conferred a benefit on Defendants that Defendants were aware of and accepted, and whether it would be unjust for Defendants to retain that benefit without compensating for it;

k. The nature and extent of class-wide injury and the measure of damages for those injuries.

221.    In recognition of the services Plaintiff Armstrong has rendered and will continue to render to the Rule 23 Class, Plaintiff Armstrong will request payment of a service award upon resolution of this action

**New Mexico Class Action Allegations**

222.    Plaintiffs Alvarez and Gruszka bring the Third Count under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

All current and former delivery drivers employed by Defendants at the Defendants' Domino's stores in the State of New Mexico between the date two years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Class").

223.    Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

224.    The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

**ORIGINAL COMPLAINT**

225.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

226.    All of the records relevant to the claims of Rule 23 Class Members should be found in Defendants' records.

227.    For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

228.    Notice can be provided by means permissible under Rule 23.

229.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

230.    There are more than 50 Rule 23 Class members.

231.    Plaintiffs Alvarez and Gruszka's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

232.    Plaintiffs Alvarez and Gruszka and the Rule 23 Class members are subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage and failing to reimburse for expenses.

233.    Plaintiffs Alvarez and Gruszka and the Rule 23 Class members sustain similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

234.    Plaintiffs Alvarez and Gruszka are able to fairly and adequately protect the interests of the Rule 23 Class and have no interests antagonistic to the Rule 23 Class.

235.    Plaintiffs Alvarez and Gruszka are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

**ORIGINAL COMPLAINT**

236.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

237.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

238.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiffs Alvarez and Gruszka and the Rule 23 Class members individually and include, but are not limited to:

l.    Whether Plaintiffs Alvarez and Gruszka and the Rule 23 Class members are subject to a common expense reimbursement policy that result in wages to drop below legally allowable minimum wage;

m.    Whether Plaintiffs Alvarez and Gruszka and the Rule 23 Class are subject to a policy that require them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

n.    Whether Plaintiffs Alvarez and Gruszka and the Rule 23 Class incur expenses for the benefit of Defendants in the course of completing deliveries;

o.    Whether Defendants reimburse Plaintiffs Alvarez and Gruszka and the Rule 23 Class members for their actual expenses;

p.    Whether Defendants reimburse Plaintiffs Alvarez and Gruszka and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

q.    Whether Defendants reimburse Plaintiffs Alvarez and Gruszka and the Rule 23 Class members based on a reasonable approximation of the expenses they incurred;

r.  Whether Defendants properly reimburse Plaintiffs Alvarez and Gruszka and the Rule 23 Class members;

s.  Whether Plaintiffs Alvarez and Gruszka and the Rule 23 Class were properly informed of the requirements for taking a tip credit;

t.  Whether Plaintiffs Alvarez and Gruszka and the Rule 23 Class are actually paid the wage rate they were promised by Defendants;

u.  Whether Plaintiffs Alvarez and Gruszka and the Rule 23 Class conferred a benefit on Defendants that Defendants were aware of and accepted, and whether it would be unjust for Defendants to retain that benefit without compensating for it;

v.  The nature and extent of class-wide injury and the measure of damages for those injuries.

239.  In recognition of the services Plaintiffs Alvarez and Gruszka have rendered and will continue to render to the Rule 23 Class, Plaintiffs Alvarez and Gruszka will request payment of a service award upon resolution of this action

## Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiffs and the FLSA Collective)

240.  Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

241.  Plaintiffs and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

242.  Defendants failed to properly claim a tip credit from the wages of Plaintiffs and the FLSA collective because Plaintiffs and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

**ORIGINAL COMPLAINT**

243.    Defendants paid Plaintiffs and the FLSA Collective at or close to minimum wage for all hours worked.

244.    Defendants required and continue to require Plaintiffs and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiffs and the FLSA Collective for said expenses.

245.    Defendants required and continue to require Plaintiffs and the FLSA Collective to work in a non-tipped capacity while being paid a tipped wage rate.

246.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiffs and the FLSA Collective.

247.    Plaintiffs and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

248.    As a result of Defendants' willful violations, Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages - C.R.S. 8-6-101, *et seq***
**(On Behalf of Plaintiff Armstrong and the Rule 23 Class)**

249.    Plaintiff Armstrong restates and incorporates the following allegations as if fully rewritten herein.

250.    Each Defendant has at all times been an "employer" of Plaintiff Armstrong and the Rule 23 Class members within the meaning of the Colorado minimum wage law. C.R.S. 8-6-101, *et seq*.

251.    Defendants failed to pay Plaintiff Armstrong and the Rule 23 Class members all minimum wages owed.

252.    Defendants conduct and practices, as described herein, were willful and intentional.

253.    By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff Armstrong and the Rule 23 Class members for unpaid wages, costs, reasonable attorneys' fees, and pre-judgment interest for all violations which occurred within the three years prior to the filing of the Complaint.

**Count 3**
**Failure to Pay Minimum Wages - §50-4-21, *et seq.***
**(On Behalf of Plaintiffs Alvarez, Gruszka, and the Rule 23 Class)**

254.    Plaintiffs Alvarez and Gruszka resate and incorporate the following allegations as if fully rewritten herein.

255.    Each Defendant has at all times been an "employer" of Plaintiffs Alvarez and Gruszka and the Rule 23 Class members within the meaning of the New Mexico minimum wage law. §50-4-21, *et seq*.

256.    Defendants failed to pay Plaintiffs Alvarez and Gruszka and the Rule 23 Class members all minimum wages owed.

257.    Defendants conduct and practices, as described herein, were willful and intentional.

258.    By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiffs Alvarez and Gruszka, and the Rule 23 Class members for unpaid wages, costs, reasonable attorneys' fees, and pre-judgment interest for all violations which occurred within the two years prior to the filing of the Complaint.

**Count 4**
**Colorado Wage Claim Act - C.R.S. 8-4-101, *et seq***
**(On Behalf of Plaintiff Armstrong and the Rule 23 Class)**

**ORIGINAL COMPLAINT**

259.    Plaintiff Armstrong restates and incorporates the following allegations as if fully rewritten herein.

260.    Each Defendant has at all times been an "employer" of Plaintiff Armstrong and the Rule 23 Class Members within the meaning of the Colorado Wage Act.

261.    Defendants failed to pay Plaintiff Armstrong and the Rule 23 Class members in a timely manner as required by C.R.S. 8-4-103(1).

262.    Defendants have taken unlawful deductions from the wages of Plaintiff Armstrong and the Rule 23 Class members by failing to properly reimburse for delivery-related expenses. *See* C.R.S. 8-4-105.

263.    Defendants conduct and practices, as described herein, were willful and intentional.

264.    By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff Armstrong and the Rule 23 Class members for unpaid wages, liquidated damages, costs, reasonable attorneys' fees, and pre-judgment interest for all violations which occurred within the three years prior to the filing of the Complaint.

**WHEREFORE**, Plaintiffs Brian Armstrong, Javier Alvarez, and Luke Gruszka pray for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiffs and their counsel to represent the collective action members.

B.    Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

**ORIGINAL COMPLAINT**

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.      Designation of Plaintiff Armstrong as representative of the Colorado Rule 23 Class and counsel of record as Class Counsel.

E.      Designation of Plaintiffs Alvarez and Gruszka as representatives of the New Mexico Rule 23 Class and counsel of record as Class Counsel.

F.      An award of unpaid minimum wages and unreimbursed expenses due under the FLSA.

G.      An award of restitution for unjust enrichment.

H.      Liquidated damages under the FLSA.

I.      An award of prejudgment and post-judgment interest.

J.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

K.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ David W. Henderson_____*
Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@equalrights.law
David W. Henderson
Texas State Bar No. 24032292
dhenderson@equalrights.law
Ellwanger Law LLLP
400 S Zang Blvd, Suite 600
Dallas, Texas 75208
Telephone: (469) 998-6775
Facsimile:  (469) 998-6775

**ORIGINAL COMPLAINT**

/s/ Andrew P. Kimble
Andrew R. Biller (*pro hac vice forthcoming*)
Andrew P. Kimble (*pro hac vice forthcoming*)
Philip J. Krzeski (*pro hac vice forthcoming*)
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*

www.billerkimble.com

**Counsel for Plaintiff and the putative class**

**ORIGINAL COMPLAINT**

## JURY DEMAND

Plaintiffs hereby demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Andrew P. Kimble
Andrew P. Kimble

**ORIGINAL COMPLAINT**